**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| BLUE WATER INDUSTRIES LLC, AND MARTIN MARIETTA MATERIALS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FLORENCE COUNTY AND FLORENCE COUNTY COUNCIL, <br><br> Defendants. | 4:24-cv-06821-JD <br> Civil Action No. _____ <br><br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs Blue Water Industries LLC ("Blue Water") and Martin Marietta Materials, Inc. ("Martin Marietta"), complaining of Defendants Florence County and Florence County Council (collectively, "Defendants"), respectfully show and allege unto this Honorable Court as follows:

**PARTIES AND JURISDICTION**

1.      Blue Water is a limited liability company organized and incorporated under the laws of the State of Delaware. Blue Water's sole member is Martin Marietta Materials, Inc.

2.      Martin Marietta is a corporation organized and incorporated under the laws of the State of North Carolina. Its principal place of business is in the State of North Carolina.

3.      Plaintiffs have an interest in the property located off of Highway 378, Johnsonville, SC 29555, as shown on Florence County Tax Map No. 00418, Block 02, Parcel 006, with said property being located in Florence County (the "Property").

4.      Defendant Florence County ("Florence County" or "Defendant County") is a body politic and corporate for the purpose of being sued.

5.      Defendant Florence County Council ("County Council" or "Defendant Council")

1

is the county council for Florence County, South Carolina, and is a body politic and corporate for the purpose of being sued.

6.     This Court has jurisdiction over the parties and subject matter hereto in that the allegations involve Defendants' enactment of an ordinance that prohibits Plaintiffs from utilizing and operating a mine on the Property and there is diversity of citizenship in this matter where the amount in dispute exceeds seventy-five thousand dollars ($75,000).

7.     Venue is proper as the acts complained of occurred in Florence County.

## FACTS

### *State Legislation Regarding Mining*

8.     In 1972, South Carolina joined the Interstate Mining Compact (the "Mining Compact") by enacting South Carolina Code Sections 48-21-10 to -30.

9.     In or around 1974, the South Carolina legislature enacted, modified, and further ratified the pre-existing Mining Compact, and created the modern-day South Carolina Mining Act ("Mining Act"), South Carolina Code Sections 48-20-10 to -310.

10.     For an extended period thereafter, the Mining Act was thereafter administered by the Department of Mining and Reclamation, Land Resources Conservation Commission with certain oversight by the Office of the Governor—Mining Council of South Carolina, including the adoption of certain detailed state level mining regulations. *See* S.C. Code Ann. Regs. 89-10 to -350.

11.     In or around 1993, the South Carolina legislature enacted the 1993 Government Accountability and Restructuring Act ("Restructuring Act"). The Restructuring Act effectively modified the preexisting Mining Act and transferred its administration to the South Carolina Department of Health and Environmental Control ("DHEC"), specifically including the

administrative and technical review on all applications for mining permits. The South Carolina Mining Council continues to act as an advisory body to the Governor in issues relating to mining and considers appeals on decisions made by DHEC.

12.     More specifically, the Mining Compact provides that the "[s]tates are in a position and have the responsibility to assure that mining shall be conducted in accordance with sound conservation principles, and with due regard for local conditions." S.C. Code Ann. § 48-21-10, Article I (a)(5).

13.     The Mining Compact further provides that:

The purposes of this compact are to:

1. Advance the protection and restoration of land, water and other resources affected by mining.

2. Assist in the reduction or elimination or counteracting of pollution or deterioration of land, water and air attributable to mining.

3. Encourage, with due recognition of relevant regional, physical, and other differences, programs in each of the party states which will achieve comparable results in protecting, conserving, and improving the usefulness of natural resources, to the end that the most desirable conduct of mining and related operations may be universally facilitated.

4. Assist the party states in their efforts to facilitate the use of land and other resources affected by mining, so that such use may be consistent with sound land use, public health, and public safety, and to this end to study and recommend, wherever desirable, techniques for the improvement, restoration or protection of such land and other resources.

5. Assist in achieving and maintaining an efficient and productive mining industry and in increasing economic and other benefits attributable to mining.

S.C. Code Ann. § 48-21-10, Article I (b).

14.     The Mining Compact also provides that:

Each party state agrees that within a reasonable time it will

formulate and establish an effective program for the conservation and use of mined land, by the establishment of standards, enactment of laws, or the continuing of the program in force, to accomplish:

1. The protection of the public and the protection of adjoining and other landowners from damage to their lands and the structures and other property thereon resulting from the conduct of mining operations or the abandonment or neglect of land and property formerly used in the conduct of such operations.

2. The conduct of mining and the handling of refuse and other mining wastes in ways that will reduce adverse effects on the economic, residential, recreational or aesthetic value and utility of land and water.

3. The institution and maintenance of suitable programs for adaptation, restoration, and rehabilitation of mined lands.

4. The prevention, abatement and control of water, air and soil pollution resulting from mining, present, past and future.

S.C. Code Ann. § 48-21-10, Article III.

15.    The Mining Act provides comprehensive terms for mining activities.

16.    The Mining Act has two stated purposes, which are to provide that:

(1) the usefulness, productivity, and scenic values of all lands and waters involved in mining within the State receive the greatest practical degree of protection and restoration;

(2) no mining may be carried on in the State unless plans for the mining include reasonable provisions for protection of the surrounding environment and for reclamation of the area of land affected by mining.

S.C. Code Ann. § 48-20-20.

17.    Specifically, it vests specific powers in DHEC, to wit:

The South Carolina Department of Health and Environmental Control is responsible for administering the provisions and requirements of this chapter. This includes the process and issuance of mining permits, review and approval of reclamation plans, collection of reclamation performance bonds, conduct of environmental appraisals, technical assistance to mine operators and the public, implementation of research and demonstration projects, and inspections of all mining operations and reclamation as set forth

in this chapter. Proper execution of these responsibilities may necessitate that the department seek comment from other relevant state agencies regarding matters within their respective areas of statutory responsibility or primary interests. The department has ultimate authority, subject to the appeal provisions of this chapter, over all mining, as defined in this chapter, and the provisions of this chapter regulating and controlling such activity.

S.C. Code Ann. § 48-20-30.

18.    The Mining Act details the application process for and issuance of an operating permit for mining activity. S.C. Code Ann. §§ 48-20-70, -40(21).

19.    The Mining Act further provides that no operating permit for mining activity "[m]ay be issued except in accordance with the procedures set forth in Section 48-20-70." S.C. Code Ann. § 48-20-60.

20.    Moreover, pursuant to the Mining Act, "[n]o operating permit may be modified except in accordance with the procedures set forth in Section 48-20-80 or 48-20-150." S.C. Code Ann. § 48-20-60.

21.    The Mining Act further provides for terms for suspension or revocation of a mining permit. S.C. Code Ann. § 48-20-160.

22.    The Mining Act further provides for appeals of decisions by applicants for operating permits or a ". . . person who is aggrieved and is directly affected by the permit . . . ." S.C. Code Ann. § 48-20-190. The appellate processes involve an appeal to the Administrative Law Court. *Id.*

23.    The Mining Act also provides that "[n]o provision of this chapter supersedes, affects, or prevents the enforcement of a zoning regulation or ordinance within the jurisdiction of an incorporated municipality or county . . ., except when a provision of the regulation or ordinance is in direct conflict with this chapter." S.C. Code Ann. § 48-20-250 (hereinafter referred to as the "Savings Clause").

24.     The only activities the Mining Act exempts are certain activities of the South Carolina State Ports Authority, the Department of Transportation, and the Department of Commerce, Division of Public Railways from the Mining Act. *See* S.C. Code Ann. § 48-20-280.

### *The Lease Agreement*

25.     In 2024, Blue Water was acquired by Martin Marietta and is a wholly-owned subsidiary of Martin Marietta; Martin Marietta is the sole member of Blue Water.

26.     At all relevant time periods, actions alleged herein, whether taken by or on behalf of Blue Water or Martin Marietta, were all in furtherance of preparing the Property for mining and obtaining the required permits and approvals.

27.     At all relevant time periods, the Property was and remains owned by Henry Family Farm Properties, LLC ("Henry Family Farm"), a South Carolina limited liability company.

28.     The Property is located in a rural, agricultural area, with limited, adjacent rural residences.

29.     At all relevant time periods, the Property was not zoned in Florence County and was located in an unzoned area of Florence County.

30.     On or about September 27, 2022, Henry Family Farm and Blue Water entered into a lease agreement whereby Henry Family Farm granted Blue Water exclusive possession and use of the Property, including the right to mine the Property (the "Agreement").

### *The Regulations Existing Before and During*
### *Blue Water's Investment into the Property*

31.     At all relevant time periods and as the express purpose of the Agreement, Blue Water and Martin Marietta intended and still intend to mine sand from the Property.

32.     On or about May 2, 2023, Blue Water expressly asked Florence County to confirm what land use regulations existed that might affect mining on the Property; in response, Florence

County directed Blue Water to Section 111 of Chapter 30 of the Florence County Code of Ordinances. (Exhibit 1 – Florence County E-mail of May 2, 2023.)

33.    At all relevant time periods prior to March 21, 2024, Section 111 of Chapter 30 of the Florence County Code of Ordinances provided the only regulations for mining and extraction operations in unzoned areas.

34.    At all relevant time periods prior to March 21, 2024, Section 111 of Chapter 30 of the Florence County Code of Ordinances stated:

> 1.  Mines greater than five acres shall be not less than 300 feet from the property line. Such mines shall not be less than 500 feet from the nearest residential use and not less than 1,000 feet from an obvious place where children may be present such as: schools, playgrounds, and daycares, etc.
>
> 2.  Mines five acres or less shall be 100 feet from any residential use. And not less than 50 feet from property line.
>
> 3.  A buffer shall be provided, that complies with section 30-111 Table II, Type D Buffer along the margins of the excavation site to reduce sedimentation and air borne debris.
>
> 4.  Proposed facilities shall have direct access off a collector or arterial street.
>
> 5.  Mine sites greater than five acres shall have a permanent sign installed in plain view of the mine's vehicular entrance. Such signs shall be not less than nine square feet and state that the referenced property is a mining operation with contact information for emergency purposes.
>
> 6.  Where explosives are employed, the mine operator shall provide an action plan that has been approved by the fire marshal having jurisdiction and the Florence County Sheriff's Office. Explosive operation times shall be within the hours of 7:00 a.m. and 5:00 p.m. Monday—Friday excluding county observed holidays.

Florence County, S.C., Code of Ordinances Ch. 30, Art. III, § 30-111(6)(d) (2021).

### *The Permit Applications*

35.    On or about August 1, 2023, Blue Water submitted an application for a mine

operating permit to DHEC in order to be permitted to mine sand from the Property, with revisions of the application occurring on August 11, 2023 as well as November 9, 2023. (Exhibit 2 – Mine Permit Application.)

36.     On or about August 8, 2023, counsel for Blue Water executed a letter to DHEC, which was submitted to DHEC on or about that same date, that attested Henry Family Farm had all requisite power and authority to enter into the Agreement and that pursuant to said Agreement, Blue Water had acquired the right to exclusive possession and use of the Property, including the right to mine the Property. (Exhibit 3 – Counsel Letter of Aug. 8, 2023.)

37.     A mining permit is neither simple nor cheap to acquire.

38.     An application for a mining permit requires specialized mining, environmental, and legal expertise that investigates, documents, and covers an array of issues, including but not limited to: (A) the protection of natural resources, including waste water, wetlands issues, erosion control, emissions, and cultural and historic sites; (B) safety measures to prevent public hazards; (C) reclamation efforts; and (D) legal authorization for land entry.

39.     On September 6, 2023, Blue Water applied to DHEC for a separate permit in conjunction with its earlier application for a mining permit; this ancillary permit was the National Pollutant Discharge Elimination System ("NPDES") General Permit for Discharges Associated with Nonmetal Mineral Mining Facilities.

40.     Like a mining permit, a NPDES permit is neither simple nor cheap to acquire.

41.     A NPDES permit requires specialized mining, environmental, and legal expertise and the design of a system and facility that will handle water run-off in compliance with the federal Clean Water Act and state and federal laws and regulations implementing the Clean Water Act, as administered by DHEC.

42.    Blue Water and Martin Marietta expended significant amounts of money, time, effort, and other resources in preparation for the utilization and operation of the Property as a mine, including but not limited to the money, time, effort, and other resources expended to apply for the aforementioned permits.

43.    On or about October 5, 2023, DHEC issued the requested NPDES General Permit for Discharges Associated with Nonmetal Mineral Mining Facilities. (Exhibit 4 – NPDES General Permit.)

44.    Upon information and belief, DHEC, now known as the South Carolina Department of Environmental Services, is withholding approval of the mining permit due to Defendants' actions, in whole or in part, in response to the aforementioned mine operating permit application, as set forth more fully below.

### *Defendants' Actions in Response to the Permit Applications*

45.    On November 16, 2023, the County Council of Florence County enacted an "emergency" ordinance placing a moratorium on County approvals for the establishment of mines. The "emergency" ordinance failed to comply with for adopting an ordinance affecting land use.

46.    On December 7, 2023, Florence County issued a letter to DHEC for the purpose of communicating "serious concerns" regarding Blue Water's permit application as well as apprising DHEC of "certain ongoing legislative and administrative actions that may cause a permit for the [Property] to be in conflict with policies and initiatives of [Florence] County." (Exhibit 5 – Florence County Letter of Dec. 7, 2023, p. 1.)

47.    The December 7, 2023, letter from Florence County to DHEC stated Florence County was "undertaking a study of issues relating to mines in these areas with an eye toward new zoning regulations . . . ." (Exhibit 5 – Florence County Letter of Dec. 7, 2023, p. 3.)

48.    The December 7, 2023, letter from Florence County to DHEC also suggested to

DHEC that it "may wish to postpone any determinations with respect to applications for mines in the County . . . ." (Exhibit 5 – Florence County Letter of Dec. 7, 2023, p. 3.)

49.     On December 14, 2023, an ordinance updating the Florence County Code of Ordinances regarding mining operations was introduced and went through first reading at the County Council for Florence County, said ordinance being identified by Florence County as Ordinance No. 26-2023/24 ("Mining Ordinance"). (Exhibit 6 – Mining Ordinance, p. 1.)

50.     On January 23, 2024, the Florence County Planning Commission considered and discussed the Mining Ordinance. (Exhibit 6 – Mining Ordinance, p. 1.)

51.     The meeting minutes of the Florence County Planning Commission discussion of the Mining Ordinance reflect there was a discussion that "[i]n a mining permit[,] staff cannot do anything that contradicts the requirements that are allowed for SCDHEC." (Exhibit 7 – Planning Commission Minutes of Jan. 23, 2024, p. 19.)

52.     After discussing the Mining Ordinance, the Florence County Planning Commission voted unanimously to approve the proposed ordinance. (Exhibit 7 – Planning Commission Minutes of Jan. 23, 2024, p. 19.)

53.     On February 15, 2024, the Mining Ordinance went through second reading and the County Council of Florence County also held a public hearing on the Mining Ordinance. (Exhibit 8 – County Council Minutes of Feb. 15, 2024, pp. 2, 6.)

54.     During the same council meeting on February 15, 2024, the County Council of Florence County approved unanimously to defer the Mining Ordinance to the Committee on Public Services and County Planning. (Exhibit 8 – County Council Minutes of Feb. 15, 2024, p. 6.)

55.     On February 29, 2024, the Committee on Public Services and County Planning, comprised of three members of the County Council of Florence County, discussed the Mining

Ordinance and, upon information and belief, approved for it to return to County Council for third reading. (Exhibit 9 – Committee Agenda of Feb. 29, 2024.)

56.     On March 21, 2024, the Mining Ordinance went through its third reading and the County Council of Florence County approved it unanimously, as amended. (Exhibit 10 – County Council Minutes of Mar. 21, 2024, pp. 6–7.)

57.     The Mining Ordinance was effective immediately as of March 21, 2024. (Exhibit 6 – Mining Ordinance, p. 1.)

58.     The Mining Ordinance modified Section 111 of Chapter 30 of the Florence County Code of Ordinances and added additional regulations for mining and extracting operations via Section 117 of Chapter 30 of the Florence County Code of Ordinances.

59.     Subsection (d), Paragraph (6), Section 111 of Chapter 30 of the Florence County Code of Ordinances removed all prior regulations contained within that subsection and now simply refers to Section 117 of Chapter 30 for the regulations affecting mining and extraction operations.

60.     Section 117 of Chapter 30 of the Florence County Code of Ordinances requires a certificate of zoning compliance in order to conduct mining or extraction operations, which requires an application and documentation to demonstrate compliance with a number of regulations that took effect as of March 21, 2024.

61.     Section 117 of Chapter 30 of the Florence County Code of Ordinances requires excessive and unreasonable buffers and fees to mine property in unzoned areas in Florence County.

62.     Defendants' promulgation of excessive and unreasonable buffers and fees relative to mining operations in unzoned areas of Florence County has no rational or legitimate basis in law.

63.     On August 8, 2024, Martin Marietta submitted a Freedom of Information Act

("FOIA") request to Florence County, pursuant to the South Carolina Freedom of Information Act, South Carolina Code Sections 30-4-10 to -165, for any study referred to in the December 7, 2023 letter from Florence County to DHEC and for any study undertaken of mining in Florence County in 2023 and 2024. (Exhibit 11 – FOIA Request of Aug. 8, 2024.)

64.    Florence County never responded to this FOIA request.

65.    Upon information and belief, Florence County's purported study, which has never been produced to Martin Marietta, was a pretextual rationale to interfere with Blue Water and Martin Marietta's permit application.

66.    Upon information and belief, Florence County did not conduct the purported study and enacted the Mining Ordinance, which constituted an arbitrary and capricious act.

67.    The new regulations set forth in the Mining Ordinance effectively prohibit Plaintiffs from utilizing and operating the Property as a mine.

68.    Upon information and belief, Defendants promulgated the Mining Ordinance, in whole or in part, for the purpose of preventing Plaintiffs from utilizing and operating the Property as a mine.

### ***Defendants' Intent and Resolve to Prevent Plaintiffs' Utilization and Operation of the Property as a Mine is Evidenced by the Denial of a Variance Application Related to the Property***

69.    Pursuant to Section 297 of Chapter 30 of the Florence County Code of Ordinances, the Florence County Board of Zoning Appeals ("BZA") "hear[s] and decide[s] appeals for variance from the requirements of the Zoning Ordinance when strict application of the provisions of the ordinance would result in unnecessary hardship." Florence County, S.C., Code of Ordinances Ch. 30, Art. IX, § 30-297(b)(3)(k) (2015).

70.    On August 20, 2024, a wholly-owned subsidiary of Blue Water submitted a variance application to the BZA, seeking relief from compliance with the newly enacted Section

117 of Chapter 30 of the Florence County Code of Ordinances. (Exhibit 12 – Variance Application of Aug. 20, 2024.)

71.    The BZA conducted a public hearing on September 17, 2024 to consider the variance application. (Exhibit 13 – BZA Revised Agenda of Sept. 17, 2024.)

72.    A staff report was submitted to the BZA for its consideration of the variance application. (Exhibit 14 – Staff Report to the BZA.)

73.    After conducting the public hearing, the BZA voted unanimously to deny the variance request. (Exhibit 15 – BZA Minutes of Sept. 17, 2024.)

74.    On September 25, 2024, the BZA issued its Order on Variance Application, concluding, *inter alia*: (A) Blue Water's wholly-owned subsidiary did "not have an unnecessary hardship"; (B) the newly enacted Section 117 of Chapter 30 of the Florence County Code of Ordinances "would not effectively prohibit or unreasonably restrict the utilization of the property"; and (C) a variance would "be of substantial detriment to adjacent property or to the public good." (Exhibit 16 – BZA Order on Variance Application, p. 1.)

75.    The BZA's September 25, 2024 Order on Variance Application further provided that Blue Water's wholly-owned subsidiary "must comply with all requirements of the Florence County Code of Ordinances in order to obtain a Florence County Certificate of Zoning Compliance." (Exhibit 16 – BZA Order on Variance Application, p. 2.)

76.    Based upon information and belief, the BZA's decision reflects Defendants' intent and resolve to prohibit Martin Marietta from utilizing and operating the Property as a mine.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment – Plaintiffs' Vested Right)

77.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

78.     An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

79.     This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

80.     Plaintiffs expended significant amounts of money, time, effort, and other resources in preparation for the utilization and operation of the Property as a mine, including but not limited to the money, time, effort, and other resources expended to apply for the aforementioned permits as well as inquiring with Florence County as to the land use regulations then existing that might affect mining on the Property.

81.     Defendants were aware at all times relevant of the DHEC-granted NPDES permit to Blue Water, for which Martin Marietta would benefit, as well as the mining permit from DHEC being pursued by Blue Water.

82.     Upon information and belief, the NPDES permit and the mining permit application was the reason Defendants developed and ultimately promulgated the Mining Ordinance, which was adopted for the purpose, in part or in whole, to prevent Plaintiffs from utilizing and operating the Property as a mine.

83.     Plaintiffs were merely awaiting a mine operating permit from DHEC prior to even the first reading of the Mining Ordinance.

84.     Plaintiffs, in good faith, substantially entered into the performance of a series of acts necessary to accomplish the end intended, i.e. the utilization and operation of the Property as

a mine.

85.    Indeed, because a mine permit is required before disturbing land for mining, and because Florence County had deliberately interfered with issuance of the mine permit via its December 7, 2023 letter to DHEC, Plaintiffs were precluded from taking further physical action on the Property to prepare it for mining.

86.    Plaintiffs applied for the mine permit over three months before Florence County was even considering the Mining Ordinance and over seven months before its passage.

87.    Defendants wrongfully interfered with the permit processes committed to DHEC to delay issuance of the mine permit requested by Palmetto Sand. Indeed, Florence County expressly asked DHEC to delay issuance of the permit so that Defendants could misuse their powers to pass an ordinance that prohibited Plaintiffs' use of the Property to mine sand and gravel.

88.    Upon information and belief, as part of its scheme to deprive Plaintiffs of the use of the Property, Florence County falsely represented to DHEC that it was undertaking a study of mining.

89.    Plaintiffs' intended utilization of the Property does not and would not constitute a detriment to the public health, safety, or welfare.

90.    A use of property which existed lawfully before the enactment of a local ordinance may continue afterwards even though the use does not comply with the newly enacted restriction.

91.    Plaintiffs have a vested right under state law to utilize and operate the Property as a mine, which existed prior to Defendants' actions in response to Plaintiffs' permit applications to DHEC.

92.    Defendants' actions have violated Plaintiffs' vested right under state law to utilize and operate the Property as a mine.

93.    Plaintiffs are therefore entitled to a declaration that the Mining Ordinance is void and of no effect insofar as it might apply to Plaintiffs' utilization and operation the Property as a mine.

## FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment – Preemption)**

94.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

95.    An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

96.    This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

97.    Local government ordinances conflict with state laws when their conditions, express or implied, are inconsistent and irreconcilable with South Carolina law.

98.    The Mining Compact and the Mining Act comprise state statutes enacted by the South Carolina legislature governing mining activities and the operation of mines in South Carolina.

99.    Defendants have chosen not to zone the area in which the Property is located.

100.    The Mining Ordinance does not purport to establish a zoning district.

101.    The Mining Ordinance, in whole or in part, directly conflicts with the Mining Act and Mining Compact.

102.    Indeed, Florence County's own letter of December 7, 2023 to DHEC stated the

issuance of a mine permit by DHEC pursuant to its regulations would be "in conflict" with policies and initiatives of Florence County.

103.    The alleged issues and concerns outlined in Florence County's letter of December 7, 2023 to DHEC, including but not limited to environmental protection and storm water management, are subject to DHEC regulation.

104.    The new regulations set forth in the Mining Ordinance effectively prohibit Plaintiffs from utilizing and operating the Property as a mine specifically and effectively prohibit new mining in Florence County generally, such that the regulations are both so excessive and so unreasonable that they are not designed to regulate, but to prohibit mining activity made lawful by the Mining Act and Mining Compact.

105.    Further, the Mining Ordinance hinders the accomplishment of the Mining Act's and Mining Compact's purpose and stands as an obstacle to and frustration of purpose of the Mining Act and Mining Compact.

106.    South Carolina does not allow localities to exercise a "veto power" over determinations made by state agencies pursuant to statutorily delegated duties.

107.    The process outlined in the Mining Ordinance effectively operates as a functional veto power held by Defendants over DHEC's decision to permit a mine.

108.    The South Carolina legislature did not intend to delegate to localities the authority to invalidate the purpose and effect of a state issued permit simply where the county calls its law a zoning ordinance.

109.    The Mining Ordinance exceeds the scope of the Mining Act's Savings Clause.

110.    Defendants' actions have violated Plaintiffs' right under state law to utilize and operate the Property as a mine.

111.    Plaintiffs are therefore entitled to a declaration that the Mining Ordinance is void and preempted, whether express or implied (including but not limited to an implied conflict preemption), in whole or in part, as a matter of law.

**FOR A THIRD CAUSE OF ACTION**
**(Declaratory Judgment – Due Process Under South Carolina Law)**

112.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

113.    An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

114.    This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

115.    Section 3 of Article I of the Constitution of the State of South Carolina provides: "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

116.    Section 16-5-60 of the South Carolina Code provides:

> Any citizen who shall be hindered, prevented or obstructed in the exercise of the rights and privileges secured to him by the Constitution and laws of the United States or by the Constitution and laws of this State or shall be injured in his person or property because of his exercise of the same may claim and prosecute the county in which the offense shall be committed for any damages he shall sustain thereby, and the county shall be responsible for the payment of such damages as the court may award, which shall be paid by the county treasurer of such county on a warrant drawn by

the governing body thereof.

117.    The new regulations set forth in the Mining Ordinance effectively prohibit Plaintiffs from utilizing and operating the Property as a mine specifically and effectively prohibit new mining in Florence County generally, such that the regulations are both so excessive and so unreasonable that they are not designed to regulate, but to prohibit mining activity made lawful by the Mining Act.

118.    Defendants have not required so excessive and unreasonable buffers and fees to utilize property elsewhere or in other ways in Florence County besides mining in unzoned areas in Florence County.

119.    Defendants' promulgation of excessive and unreasonable buffers and fees relative to mining operations in unzoned areas of Florence County has no rational or legitimate basis in law.

120.    Additionally, the new regulations set forth in the Mining Ordinance are, in whole or in part, unconstitutionally vague and/or overbroad.

121.    Defendants have no discretion or right to refuse to allow Plaintiffs from utilizing and operating the Property as a mine.

122.    Defendants' prohibition of Plaintiffs from utilizing and operating the Property as a mine, in whole or in part, via promulgation of the Mining Ordinance, is arbitrary and capricious.

123.    Defendants' actions taken to prevent Plaintiffs from utilizing and operating the Property as a mine have deprived Plaintiffs of due process of law.

124.    Plaintiffs are accordingly entitled to a judgment declaring that the Mining Ordinance is unconstitutional and/or void and of no effect on its face and/or as applied to Plaintiffs' utilization and operation the Property as a mine.

## FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment – Due Process Under United States Law)

125.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

126.    An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

127.    This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

128.    The Fifth Amendment to the Constitution of the United States, which is applicable to the State of South Carolina and its political subdivisions, including Defendants, by virtue of the Fourteenth Amendment to the Constitution of the United States, provides in pertinent part as follows: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for the public use, without just compensation."

129.    The new regulations set forth in the Mining Ordinance effectively prohibit Plaintiffs from utilizing and operating the Property as a mine specifically and effectively prohibit new mining in Florence County generally, such that the regulations are both so excessive and so unreasonable that they are not designed to regulate, but to prohibit mining activity made lawful by the Mining Act.

130.    Defendants have not required so excessive and unreasonable buffers and fees to utilize property elsewhere or in other ways in Florence County besides mining in unzoned areas in Florence County.

131.    Defendants' promulgation of excessive and unreasonable buffers and fees relative to mining operations in unzoned areas of Florence County has no rational or legitimate basis in law.

132.    Additionally, the new regulations set forth in the Mining Ordinance are, in whole or in part, unconstitutionally vague and/or overbroad.

133.    Defendants' actions intentionally and flagrantly targeted Plaintiffs, including but not limited to their interference with DHEC's mining permit application process and their promulgation of the Mining Ordinance to prohibit Plaintiffs from utilizing and operating the Property as a mine, which was a use of property expressly permitted under Defendants' own ordinances prior to the enactment of the Mining Ordinance and which is an activity expressly reserved to DHEC's regulation by the Mining Compact and the Mining Act.

134.    Defendants have no discretion or right to refuse to allow Plaintiffs from utilizing and operating the Property as a mine.

135.    Defendants' prohibition of Plaintiffs from utilizing and operating the Property as a mine, in whole or in part, via interference with DHEC's mining permit application process and promulgation of the Mining Ordinance, is arbitrary and capricious.

136.    Defendants' actions taken to prevent Plaintiffs from utilizing and operating the Property as a mine have deprived Plaintiffs of due process of law.

137.    Plaintiffs are accordingly entitled to a judgment declaring that the Mining Ordinance is unconstitutional and/or void and of no effect on its face and/or as applied to Plaintiffs' utilization and operation the Property as a mine.

## FOR A FIFTH CAUSE OF ACTION
### (Declaratory Judgment – Equal Protection Under South Carolina Law)

138.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated

herein.

139.    An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

140.    This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

141.    Section 3 of Article I of the Constitution of the State of South Carolina provides: "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

142.    Section 16-5-60 of the South Carolina Code provides:

> Any citizen who shall be hindered, prevented or obstructed in the exercise of the rights and privileges secured to him by the Constitution and laws of the United States or by the Constitution and laws of this State or shall be injured in his person or property because of his exercise of the same may claim and prosecute the county in which the offense shall be committed for any damages he shall sustain thereby, and the county shall be responsible for the payment of such damages as the court may award, which shall be paid by the county treasurer of such county on a warrant drawn by the governing body thereof.

143.    Plaintiffs are similarly situated to others in Florence County that intend to and do utilize property lawfully.

144.    Defendants have not required so excessive and unreasonable buffers and fees to utilize property elsewhere or in other ways in Florence County besides mining in unzoned areas in Florence County.

145.    Defendants' promulgation of excessive and unreasonable buffers and fees relative to mining operations in unzoned areas of Florence County unconstitutionally treats individuals and entities intending to utilize and operate property as mines disparately with no rational or legitimate basis in law for such treatment.

146.    Plaintiffs are also similarly situated to others in Florence County that intend to and do utilize and operate of property as a mine.

147.    Defendants have not prevented other similarly situated individuals and/or entities from utilizing or operating property in Florence County as mines.

148.    Further, among other things, Defendants have not sought to block permits sought by other similarly situated individuals and/or entities from DHEC, only Blue Water.

149.    Indeed, Defendants have affirmatively permitted other similarly situated individuals and/or entities to use their property in Florence County as mines.

150.    Defendants' interference with DHEC's mining permit application process and promulgation of the Mining Ordinance unconstitutionally subjected Plaintiffs to disparate treatment with no rational or legitimate basis in law for such treatment.

151.    Defendants' actions taken to prevent Plaintiffs from utilizing and operating the Property as a mine have deprived Plaintiffs of equal protection of the law.

152.    Plaintiffs are accordingly entitled to a judgment declaring that the Mining Ordinance is unconstitutional and/or void and of no effect on its face and/or as applied to Plaintiffs' utilization and operation the Property as a mine.

### FOR A SIXTH CAUSE OF ACTION
**(Declaratory Judgment – Equal Protection Under United States Law)**

153.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

154.    An active and now existing dispute and/or controversy exists between Plaintiffs and Defendants.

155.    This action is brought under the provisions of Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code and there is a real and justiciable controversy between the parties by these proceedings. Plaintiffs request that this Court inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth above and below.

156.    The Fourteenth Amendment to the Constitution of the United States, which is applicable to the State of South Carolina and its political subdivisions, including Defendants provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

157.    Plaintiffs are similarly situated to others in Florence County that intend to and do utilize property lawfully.

158.    Defendants have not required so excessive and unreasonable buffers and fees to utilize property elsewhere or in other ways in Florence County besides mining in unzoned areas in Florence County.

159.    Defendants' promulgation of excessive and unreasonable buffers and fees relative to mining operations in unzoned areas of Florence County unconstitutionally treats individuals and entities intending to utilize and operate property as mines disparately with no rational or legitimate basis in law for such treatment.

160.    Plaintiffs are also similarly situated to others in Florence County that intend to and do utilize and operate of property as a mine.

161.    Defendants have not prevented other similarly situated individuals and/or entities from utilizing or operating property in Florence County as mines.

162.    Further, among other things, Defendants have not sought by other similarly situated individuals and/or entities from DHEC, only Blue Water.

163.    Indeed, Defendants have affirmatively permitted other similarly situated individuals and/or entities to use their property in Florence County as mines.

164.    Defendants' interference with DHEC's mining permit application process and promulgation of the Mining Ordinance unconstitutionally subjected Plaintiffs to disparate treatment with no rational or legitimate basis in law for such treatment.

165.    Defendants' actions taken to prevent Plaintiffs from utilizing and operating the Property as a mine have deprived Plaintiffs of equal protection of the law.

166.    Plaintiffs are accordingly entitled to a judgment declaring that the Mining Ordinance is unconstitutional and/or void and of no effect on its face and/or as applied to Plaintiffs' utilization and operation the Property as a mine.

### FOR A SEVENTH CAUSE OF ACTION
**(Damages and Fees – South Carolina Law)**

167.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

168.    Section 16-5-60 of the South Carolina Code provides:

> Any citizen who shall be hindered, prevented or obstructed in the exercise of the rights and privileges secured to him by the Constitution and laws of the United States or by the Constitution and laws of this State or shall be injured in his person or property because of his exercise of the same may claim and prosecute the county in which the offense shall be committed for any damages he shall sustain thereby, and the county shall be responsible for the payment of such damages as the court may award, which shall be paid by the county treasurer of such county on a warrant drawn by

the governing body thereof.

169.    Section 15-77-300(A) of the South Carolina Code provides:

> In any civil action brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if (1) the court finds that the agency acted without substantial justification in pressing its claim against the party; and (2) the court finds that there are no special circumstances that would make the award of attorney's fees unjust.

170.    Defendants' actions constitute actions taken under color of state law that deprive Plaintiffs of rights and privileges secured by the Constitution of the State of South Carolina and the Constitution of the United States.

171.    Thus, Defendants have violated Section 16-5-60 of the South Carolina Code.

172.    As a direct result of Defendants' actions, Plaintiffs have been deprived of their rights secured by the Constitution of the State of South Carolina and the Constitution of the United States, as they are unable to develop, occupy, and use their interest in the Property for a lawful use.

173.    Further, as a direct result of Defendants' actions, Plaintiffs have and will suffer the loss of business revenues and profits, the loss of the economic use of the Property, and the loss other value of their investment, for which they are entitled to recover actual and compensatory damages.

174.    Plaintiffs are entitled to recover the aforesaid damages pursuant to Section 16-5-60 of the South Carolina Code.

175.    Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to Section 15-77-300(A) of the South Carolina Code.

## FOR A EIGHTH CAUSE OF ACTION
### (Damages and Fees – United States Law)

176.    Plaintiffs incorporate the foregoing paragraphs as if fully and completed restated herein.

177.    Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

178.    Section 1988 of Title 42 of the United States Code provides: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

179.    Defendants' actions constitute actions taken under color of state law that deprive Plaintiffs of rights and privileges secured by the Constitution of the United States.

180.    Thus, Defendants have violated Section 1983 of Title 42 of the United States Code.

181.    As a direct result of Defendants' actions, Plaintiffs have been deprived of their rights secured by the Constitution of the State of South Carolina and the Constitution of the United States, as they are unable to develop, occupy, and use their interest in the Property for a lawful use.

182.    Further, as a direct result of Defendants' actions, Plaintiffs have and will suffer the loss of business revenues and profits, the loss of the economic use of the Property, and the loss other value of their investment, for which they are entitled to recover actual and compensatory damages.

183.    Plaintiffs are entitled to recover the aforesaid damages pursuant to Section 1983 of Title 42 of the United States Code.

184.    Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to Section 1988 of Title 42 of the United States Code.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray that this Court:

a.   issue declarations set forth above;

b.   award Plaintiffs' actual and compensatory damages;

c.   award Plaintiffs the cost of this action including reasonable attorneys' fees; and/or

d.   for such other and further relief as this Court deems just and proper.

Respectfully,

*s/ Rhett D. Ricard*
Paul A. Dominick, Fed. Bar No. 577
Rhett D. Ricard, Fed. Bar No. 13549
pdominick@maynardnexsen.com
rricard@maynardnexsen.com
MAYNARD NEXSEN PC
205 King Street, Suite 400
Charleston, SC  29401

November 22, 2024
Charleston, South Carolina

Attorneys for Plaintiffs