IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BLUE WATER INDUSTRIES LLC AND MARTIN MARIETTA MATERIALS, INC., | ) ) ) ) | Case No.: 4:24-cv-06821-JD |
| Plaintiffs, | ) ) | |
| | ) | **ORDER AND OPINION** |
| vs. | ) ) | |
| FLORENCE COUNTY AND FLORENCE COUNTY COUNCIL, | ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants Florence County and Florence County Council's Motion for Protective Order (DE 23). Plaintiffs Blue Water Industries, LLC, and Martin Marietta Materials, Inc., filed a response in opposition (DE 24), and Defendants filed a reply (DE 25). The Motion asks the Court to prohibit further deposition inquiry into the subjective motives of current and former members of Florence County Council in voting on the mining ordinance challenged in this action.

For the reasons below, the Court grants in part and denies in part the Motion. The Motion is granted as to Councilmember Jason Springs and as to unwaived matters concerning former Councilmember Roger Poston. It is denied only to the extent Plaintiffs seek clarification of the motivational subject Poston voluntarily disclosed before the privilege was asserted.

## I.      BACKGROUND

This action concerns Plaintiffs' proposed sand-mining operation on property located in an unzoned area of Florence County. Plaintiffs allege that after they sought the permits required by the South Carolina Department of Health and Environmental Control, the County took steps to prevent the mine from opening. According to the Complaint, County Council first adopted an emergency moratorium directed at sand-mining approvals and later enacted a mining ordinance containing buffers, fees, and other requirements that allegedly made operation of Plaintiffs' proposed mine impossible. (DE 1, ¶¶ 35–74.)

Plaintiffs assert, among other claims, federal and state due process and equal protection claims. They allege that Defendants intentionally targeted their proposed operation, interfered with the state permitting process, treated Plaintiffs differently from other mining operators, and lacked a rational basis for the challenged actions. (DE 1, ¶¶ 125–166.) Defendants deny those allegations and maintain that the County acted within its lawful authority.

During discovery, Plaintiffs deposed former Councilmember Roger Poston on September 4, 2025, and Councilmember Jason Springs on September 5, 2025. (DE 23 at 1.) Defendants' counsel instructed both witnesses not to answer certain questions concerning their internal motivations for voting on the mining ordinance. Defendants thereafter filed the present Motion pursuant to Rule 26(c)(1)(D), Rule 30(d)(3)(B), Fed. R. Civ. P., and Local Civil Rule 30.04(C), D.S.C. (DE 23 at 1–2.)

Plaintiffs no longer challenge the two assertions of legislative privilege made during Springs's deposition. (DE 24 at 1 n.1.) Thus, the remaining dispute concerns Poston. The deposition excerpts submitted by Plaintiffs show that Poston was first asked whether learning that the County had conducted no studies would have changed his "mind or [his] vote on the new mining ordinance[.]" (Poston Dep. 118:1–2, DE 24-1 at 4.) Poston answered, "Probably not." (*Id.* at 118:17, DE 24-1 at 4.) When counsel asked why not, Poston stated, "Because the public was out crying to me that they didn't want that mine. That's the bottom line," and added that his phone "was blowing up." (*Id.* at 118:19–20; 23, DE 24-1 at 4.) He later clarified that studies "could have changed some other members of council, but not mine." (*Id.* at 119:5–6, DE 24-1 at 5.)

Later in the deposition, Poston testified that he personally wanted the mine stopped and that County Council had voted unanimously to stop it. (*Id.* at 125:24–126:1–3, DE 24-1 at 6–7.) When asked whether other councilmembers deferred to him, Poston stated that, if asked, he would have told them what his constituents wanted. He then testified that representing his constituents was his job and that an elected official who failed to do so "won't be there long." (*Id.* at 126:22, DE 24-1 at 7.) Plaintiffs' counsel next asked:

> [Plaintiffs' Counsel:] And was that on your mind when making your vote for the passage of this new mining regulation?
>
> [Defendants' Counsel:] One second. I think we might be crossing over into some stuff covered by legislative privilege. But as far as his motivations, I can instruct—objectively instruct him not to answer if necessary. But I'm going to instruct him not to answer that one on the basis of legislative privilege with regards to his internal motivations for why he did or didn't vote a certain way.

[Mr. Poston:] I wouldn't mind saying. But—

[Defendants' Counsel:] Well, I instruct—you not to answer that—that question.

[Mr. Poston:] I understand. I understand. . . . Good catch.

(Poston Dep. 126:23–127:21, DE 24-1 at 7–8.) Plaintiffs contend that Poston waived his testimonial legislative privilege by answering the earlier questions and by stating that he did not mind answering the final question. (DE 24 at 7–8.) Defendants respond that the earlier testimony reflected only Poston's general opposition to the mine or hypothetical views and did not disclose his actual internal motivation for voting on the ordinance. (DE 25 at 1–2.)

## II.     LEGAL STANDARD

### A.     Protective Orders

Rule 26 of the Federal Rules of Civil Procedure governs the scope and limitations of discovery. Rule 26(b)(2)(C) provides, in pertinent part, that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Additionally, Rule 26(c)(1) authorizes the court, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Rule 26(c)(1) Fed. R. Civ. P. The rule enumerates various

4

protective measures the court may impose, including forbidding discovery altogether, specifying terms for discovery, or limiting the scope or method of discovery. *See* Rule 26(c)(1)(A)-(H) Fed. R. Civ. P.

The court possesses broad discretion to control the discovery process and to determine whether a protective order is warranted. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) ("The Rule confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). To obtain a protective order under Rule 26(c), the moving party bears the burden of demonstrating good cause. *See* Rule 26(c) Fed. R. Civ. P. This standard requires more than conclusory assertions; courts have consistently held that the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," to establish good cause. 8A *Wright and Miller's Federal Practice and Procedure* § 2035 (3d ed. 2026). The determination of good cause is a factual inquiry, requiring the court to balance the interests and hardships involved in light of the nature of the information sought. *Id.*

## B.    Legislative Immunity and Testimonial Privilege

Local legislators enjoy absolute immunity from civil liability for acts undertaken in a legislative capacity. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980). Municipalities, however, are not immune from § 1983 liability for unconstitutional enactments of their legislative bodies. *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296,

303 (4th Cir. 1995) (en banc). *Berkley* expressly declined to decide the continued vitality of individual councilmembers' testimonial privilege. *Id.* at 303 n.9. *Burtnick* later confirmed that the testimonial privilege remained viable in this Circuit and generally protects legislators from compelled testimony concerning their motives for legislative acts. *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996). *Burtnick* also recognized that the privilege may be waived by the individual members. *Id.*

Whether conduct is legislative turns on the nature and function of the act, not the official's title or subjective motive. *Bogan*, 523 U.S. at 54–55; *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011). Voting for an ordinance is "quintessentially legislative." *Bogan*, 523 U.S. at 55. In the land-use context, *Bruce* held that county councilmembers' zoning vote remained legislative even though they allegedly met with and were influenced by interested constituents. 631 F.2d at 279–80. Similarly, drafting, introducing, and enacting a prospective zoning ordinance generally constitute legislative acts even when a particular project prompted the ordinance. *2BD Assocs. Ltd. P'ship v. Cnty. Comm'rs for Queen Anne's Cnty.*, 896 F. Supp. 528, 532–34 (D. Md. 1995). By contrast, later enforcement of an ordinance or application of a general policy to a particular parcel may be administrative and thus not subject to immunity. *Id.* at 534.

The privilege is personal to the individual legislator and may be asserted or waived by that legislator. *Alexander v. Holden*, 66 F.3d 62, 68 n.4 (4th Cir. 1995). In *Alexander*, the Fourth Circuit found clear waiver where commissioners testified extensively about their motives during depositions, with counsel present and without

objection. *Id.* Another court, relying on federal Speech or Debate Clause authorities, required an explicit and unequivocal relinquishment before finding waiver. *2BD Assocs.*, 896 F. Supp. at 535. Because *2BD Associates* predates *Alexander* and is not binding, the Court applies the later Fourth Circuit decisions while heeding *2BD Associates'* caution against finding waiver from equivocal conduct. The inquiry, therefore, focuses on what the legislator voluntarily disclosed, whether counsel timely objected, and the relationship between the disclosed testimony and the information later withheld.

Some courts have treated state and local legislative privilege as qualified when the evidence is necessary to vindicate important federal public rights. *See Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 335–45 (E.D. Va. 2015); *Va. State Conf. NAACP v. Cnty. Sch. Bd. of Shenandoah Cnty.*, No. 5:24-cv-40, 2025 WL 2585686, at *2–8 (W.D. Va. Sept. 5, 2025). Those cases apply a balancing test examining relevance, the availability of other evidence, the seriousness of the issues, the government's role, and the purposes served by the privilege. *Bethune-Hill*, 114 F. Supp. 3d at 337–38. *Bethune-Hill* also recognized that the privilege ordinarily retains greater force in civil suits brought by private plaintiffs to vindicate private rights. *Id.* at 335–36. The force of the balancing analysis thus depends on the nature of the claim and the federal interest at stake.

### III.    DISCUSSION

**A.    The Vote on the Mining Ordinance Was a Legislative Act**

The threshold issue is straightforward. County Council's consideration and enactment of the mining ordinance were legislative acts. Under *Bogan*, the character of the act turns on its nature, not the alleged motive of the official performing it, and a vote on an ordinance is quintessentially legislative. 523 U.S. at 54–55. The ordinance established prospective standards governing mining operations in Florence County and was adopted through the Council's formal legislative process. Plaintiffs' allegation that the ordinance was prompted by, or designed to stop, their particular project does not alter the legislative character of the vote.

*Bruce* reinforces that conclusion. There, the Fourth Circuit held that a zoning vote remained legislative despite allegations that councilmembers met with interested constituents and were influenced by those meetings. 631 F.2d at 279–80. The circumstances also closely resemble *2BD Associates*, where a facially general zoning amendment allegedly was enacted to prevent one identified development. The court held that drafting and passing the ordinance were legislative because the resulting rule applied prospectively and generally, while separately permitting discovery concerning enforcement and other nonlegislative conduct directed at the plaintiff. 896 F. Supp. at 533–34. The same distinction applies here. Defendants may not use legislative privilege to shield every County action involving Plaintiffs' permit application or later enforcement of the ordinance, but Poston's vote on the ordinance falls within the legislative sphere.

8

## B.    The Disputed Question Falls Within the Privilege

The unanswered question asked Poston was what was "on [his] mind" when he voted for the mining regulation. On its face, the question seeks his subjective motive for a legislative vote. Under *Burtnick*, that subject is ordinarily protected by testimonial legislative privilege. 76 F.3d at 613. Although Florence County and County Council remain subject to suit under *Berkley*, the absence of municipal immunity does not eliminate an individual legislator's testimonial privilege. *See Berkley*, 63 F.3d at 303 n.9; *Burtnick*, 76 F.3d at 613. Plaintiffs' allegations that the County acted irrationally or targeted their proposed mine make motive evidence relevant, but Rule 26(b)(1) permits discovery only of nonprivileged matter. Relevance alone, therefore, does not defeat the privilege.

The Court also declines to hold that the qualified-privilege decisions independently authorize a broad examination of every councilmember's subjective motives in this action. *Bethune-Hill* and *Virginia State Conference NAACP* involved claims of racial discrimination for which discriminatory intent was central and which implicated voting or educational rights affecting the public at large. This case concerns a private commercial land-use dispute and rational-basis constitutional claims. Although those claims are serious, the federal interest is materially different. Even assuming the qualified-privilege framework applies, it does not support unrestricted motive discovery here. The Court need not determine the privilege's full reach because Poston's own disclosures resolve the narrow question presented.

9

## C.    Poston Waived the Privilege as to a Limited Subject Matter

Defendants correctly observe that not every statement expressing opposition to a proposal waives testimonial privilege concerning a later vote. The transcript here, however, contains more than a general policy preference. Plaintiffs' counsel expressly asked whether the absence of County studies would have changed Poston's "mind or [his] vote on the new mining ordinance[.]" (Poston Dep. 118:1–2, DE 24-1 at 4.) Poston answered that it probably would not have changed his vote. When counsel asked why, Poston identified constituent opposition as "[t]he bottom line." (*Id.* 118:20–21, DE 24-1 at 4.) He further stated that studies might have changed other councilmembers' minds, "but not mine." (*Id.* 119:6, DE 24-1 at 5.)

That testimony directly disclosed the relationship between public opposition, the asserted absence of studies, and Poston's own vote. His later testimony reinforced the disclosure: he wanted the mine stopped, he conveyed what his constituents wanted, and he understood representation of those constituents to be part of his responsibility as an elected official. (DE 24-1 at 6–7.) The unanswered question— whether those considerations were on his mind when voting—did not introduce a new subject; it sought confirmation of the same motivational connection Poston had already described.

Under *Alexander*, voluntary deposition testimony about legislative motives, given with counsel present and without an assertion of privilege, can constitute waiver. 66 F.3d at 68 n.4. The Court is not persuaded by Defendants' characterization of the earlier exchange as merely hypothetical. The question expressly referred to

10

Poston's "vote on the new mining ordinance," and the follow-up asked why his vote would not have changed. Nor does *2BD Associates* require a different result. Although that court applied a stringent express-renunciation standard, this case involves a direct question about Poston's vote followed by his substantive explanation. The disclosure was neither passing nor equivocal. *Alexander* involved more extensive testimony, but the extent of disclosure informs the scope of waiver; quantity alone is not dispositive.

The waiver is nevertheless limited. Poston did not place every aspect of his legislative thought process at issue. Fairness permits Plaintiffs to clarify the motivational subject he disclosed. *See Bethune-Hill*, 114 F. Supp. 3d at 345 n.8 (recognizing that some degree of subject-matter waiver may be necessary to provide fair context). It does not authorize a general inquiry into confidential internal deliberations, communications among councilmembers or with legislative staff, attorney-client communications, legislative strategy, or unrelated reasons Poston did not reveal. Nor does Poston's testimony waive any privilege held by another councilmember. The privilege is personal, and one member cannot waive it for another.

Poston's statement that he "wouldn't mind" answering the final question does not independently establish waiver. He did not complete the answer and ultimately complied with counsel's instruction. The waiver instead arises from the earlier substantive testimony that had already connected constituent opposition and the absence of studies to his vote.

11

## D.    Assertion of the Personal Privilege

Legislative privilege belongs to the individual legislator rather than the governmental entity. *See Alexander*, 66 F.3d at 68 n.4; *Virginia State Conference NAACP*, 2025 WL 2585686, at *5. Here, Florence County and County Council filed the Motion, and the record contains no separate declaration from Poston. Nonetheless, counsel invoked the privilege in Poston's presence; Poston complied with the instruction and immediately acknowledged it by stating, "Good catch." On this record, the Court treats Poston as having adopted the assertion. The Court therefore addresses the scope and waiver questions rather than denying the Motion on procedural grounds. Any privilege assertion during the continued deposition must be made by Poston or by counsel acting on his behalf.

## E.    Scope of Further Examination

Plaintiffs may reopen Poston's deposition for the limited purpose of clarifying whether, and to what extent, the public outcry, constituent opposition, the asserted absence of County studies, and his stated desire to stop the proposed mine influenced his own vote on the mining ordinance. Reasonable follow-up questions may clarify the meaning and context of the testimony Poston already gave. Plaintiffs may not use the continued deposition to inquire into other undisclosed subjective motives, confidential internal deliberations, communications among councilmembers or with legislative staff, attorney-client communications, legislative strategy, or the subjective motives of any other councilmember.

Because Plaintiffs withdrew their challenge concerning Springs, Defendants' Motion is granted as to him. Nothing in this Order prevents Plaintiffs from seeking

nonprivileged objective facts, public statements, or evidence concerning administrative and enforcement actions. The Court does not categorically decide whether any particular communication with a constituent or an outside organization is privileged; any such dispute must be evaluated according to the communication's function and context, subject to the Federal Rules of Civil Procedure and any other applicable privilege.

## IV.    CONCLUSION

For these reasons, it is hereby ORDERED as follows:

1. Defendants' Motion for Protective Order (DE 23) is GRANTED IN PART and DENIED IN PART.

2. The Motion is GRANTED as to Councilmember Jason Springs because Plaintiffs have withdrawn their challenge to the assertions of legislative privilege made during his deposition.

3. As to former Councilmember Roger Poston, the Motion is DENIED to the extent Plaintiffs seek to ask whether, and to what extent, the public outcry, constituent opposition, the asserted absence of County studies, and Poston's stated desire to stop the proposed mine influenced his own vote on the mining ordinance. Poston waived the privilege as to that limited subject matter through his prior deposition testimony.

4. The Motion is otherwise GRANTED as to Poston. Plaintiffs may not inquire into unwaived confidential internal legislative deliberations, communications among councilmembers or with legislative staff, attorney-client communications, legislative strategy, unrelated subjective motives, or the subjective motives of any other councilmember.

5. Plaintiffs are granted leave to reopen Poston's deposition, upon appropriate notice or subpoena, for no more than one hour of examination, excluding breaks, and limited to the scope stated in this Order. Unless the parties and Poston agree otherwise, the continued deposition may be conducted remotely. Each side shall bear its own fees and costs associated with the Motion and the continued deposition.

6. Counsel shall confer in good faith concerning the scheduling and orderly completion of the continued deposition and shall endeavor to resolve any further disputes without Court intervention.

**IT IS SO ORDERED**.


Joseph Dawson, III
United States District Judge


Florence, South Carolina
July 27, 2026